# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs July 22, 2025

## JERRICO LAMONT HAWTHORNE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Hamilton County**
**No. 303396   Boyd M. Patterson, Judge**

___

### No. E2024-01527-CCA-R3-PC

___

Petitioner, Jerrico Lamont Hawthorne, appeals from the denial of his petition for post-conviction relief and argues that the post-conviction court erred in denying his claim that trial counsel was ineffective for failing to call a witness who would have testified that Defendant was not present for the shooting. Following our review of the entire record, the briefs of the parties and the applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and STEVEN W. SWORD, JJ., joined.

David W. MacNeill, Chattanooga, Tennessee, for the appellant, Jerrico Lamont Hawthorne.

Jonathan Skrmetti, Attorney General and Reporter; Ryan W. Davis, Assistant Attorney General; Coty Wamp, District Attorney General; and P. Andrew Coyle, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

A full recitation of the facts presented at trial can be found in this Court's opinion on direct appeal. *See State v. Hawthorne*, No. E2015-01635-CCA-R3-CD, 2016 WL 4708410 (Tenn. Crim. App. Sept. 7, 2016), *perm. app. denied* (Tenn. Feb. 23, 2017). As relevant to the issue presented in this appeal, on the night of July 27, 2011, police were called to the home of Yetta Harris and James Williams, Jr., in response to a shooting. When Chattanooga Police Officer Gary Frisbee approached the home, he saw Ms. Harris lying

on her stomach on the front porch with a large amount of blood coming from her stomach and vomit near her head. *Id.* at *6. Officer Frisbee went inside the home and saw a young man holding Mr. Williams, who showed no signs of life. Ms. Harris's breathing was labored, and she was in significant pain. She told Officer Frisbee that "ReeRee" was the shooter. She did not provide Officer Frisbee with Petitioner's name as the person who shot her. The mother of Petitioner's child testified at trial that Petitioner's nickname was "ReeRee." *Id.*

Ms. Harris's son, Jeffrey Dunnigan, lived with her. Mr. Dunnigan left the residence sometime between 10:30 and 11:30 p.m. to purchase a drink, and when he returned, Petitioner and his codefendant appeared from the side of the home holding guns. *Id.* at *1, 8. The men approached him, pointed their guns at him, and Petitioner told him to get inside the home. Once inside, the men took Mr. Dunnigan to a bedroom. He said they "stomped, beat, and electrocuted him with a Taser, and that the men asked for his money." *Id.* Mr. Dunnigan said he heard his mother and Mr. Williams arrive home, and Petitioner left the bedroom. *Id.* Mr. Dunnigan then heard gunshots. The codefendant left the room, and Mr. Dunnigan heard more gunshots. *Id.* Mr. Dunnigan went to the living room and saw that the victims had been shot. Petitioner and the codefendant were no longer in the house. *Id.*

Mr. Dunnigan viewed a photographic lineup at the police station later that night and identified Petitioner as one of the men in his home. *Id.* at *2, 8. Mr. Dunnigan later identified the codefendant in another photographic lineup. He had never seen either man before the night of the shooting. He testified that he was certain Petitioner and the codefendant were the men inside his home on the night of the shooting. *Id.*

Ms. Harris testified that on the night of the shooting, she and Mr. Williams arrived home sometime after 10:00 p.m. *Id.* at *9. She entered the home while Mr. Williams remained in the car to gather some belongings. When she walked inside, Petitioner was standing behind the front door and pointing a gun at her. *Id.* at *2, 9. Petitioner said, "[Y]ou know what this is," which she understood to mean he was going to rob them. Petitioner told her to get on the floor and not to say anything. When Mr. Williams entered the house, Petitioner searched Mr. Williams's pockets and began shooting him. Mr. Williams said, "Re[e]Re[e], Jerrico man, why are you doing this?" *Id.* (footnote omitted). Ms. Harris said the codefendant then walked into the living room and she heard one of the men say, "[S]hoot that b----, too." *Id.* at *3, 9. Moments later, she was shot, but she did not see who shot her. Both men then left the residence. *Id.* Ms. Harris crawled to the porch. When police arrived, she told them that "ReeRee" was the person who shot her and Mr. Williams. Ms. Harris viewed a photographic lineup at the hospital and identified Petitioner as one of the men. *Id.*

Myra Mayes testified for the defense that she had known Petitioner since childhood and that Petitioner called her at 10:30 p.m. on the night of the shooting requesting that she pick him up. *Id.* at *16. She picked him up outside the emergency room at Memorial Hospital around 11:35 p.m. She said Defendant was wearing a white shirt and white shorts and that she drove him to her house, where he stayed overnight. Ms. Mayes knew Defendant as "ReeRee" and "Jerrico." *Id.*

A Hamilton County jury convicted Petitioner of first degree premeditated murder, first degree felony murder during the perpetration of or attempt to perpetrate a robbery, attempted first degree murder, especially aggravated robbery, and attempted especially aggravated robbery. *Id.* at *20. Petitioner received an effective sentence of life plus twenty-five years.

Petitioner challenged the sufficiency of the evidence on direct appeal, and a panel of this Court affirmed his convictions, concluding the evidence of Defendant's identity as the perpetrator was sufficient to sustain his convictions, but the panel reversed and vacated Petitioner's attempted especially aggravated robbery conviction for insufficient evidence because no evidence was presented that Petitioner or his codefendant attempted to take property from Ms. Harris. *Id.* at *22. The Tennessee Supreme Court denied permission to appeal.

Petitioner filed a pro se petition for post-conviction relief, and the trial court appointed counsel. Through counsel, he filed an amended petition, alleging multiple claims of ineffective assistance of trial counsel and appellate counsel.[1] The post-conviction court denied the petition after a hearing.

*Post-Conviction Hearing*

Trial counsel testified that she had been practicing law for almost twenty years. She said she had a "very good relationship" with Petitioner and that they "always got along." She met with Petitioner on fourteen occasions between January of 2012 and Petitioner's trial, which began on July 30, 2013. Trial counsel had three additional meetings with Petitioner post-trial. Trial counsel believed the police "investigation that was conducted was deficient in certain respects[,]" specifically, the photographic lineup identifications.

---

[1] At the conclusion of the first day of a hearing on the post-conviction petition, Petitioner abandoned all claims related to appellate counsel. On appeal, Petitioner abandons all but one claim of ineffective assistance of trial counsel; accordingly, we will limit our summary of the testimony and the post-conviction court's conclusions to the one issue presented on appeal. *See Jackson v. State*, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at *6 n.2 (Tenn. Crim. App. Oct. 26, 2009) ("While the Petitioner raised additional issues in his petition for post-conviction relief, he has abandoned those issues on appeal."), *perm. app. denied* (Tenn. Apr. 16, 2010).

- 3 -

Counsel filed a motion to suppress the identifications, which the trial court denied. Trial counsel secured funding for an expert on eyewitness identification and the administration of photographic lineups, who testified at trial. Counsel testified, "pointing out the deficiencies in the investigation was . . . the central part of our defense."

Trial counsel said Petitioner provided her with a list of witnesses to contact. Trial counsel retained a private investigator, and they met with or attempted to contact each of the witnesses Petitioner provided. Trial counsel met with Monicka Davis, whose testimony at trial would have been that she was incarcerated at Silverdale with Ms. Harris. Ms. Davis "either overheard or was told that Ms. Harris said that [Petitioner] was not the shooter, and she was setting him up." Trial counsel decided against issuing a subpoena for Ms. Davis because trial counsel "felt she lacked credibility[.]" Trial counsel also "had a concern about hearsay testimony." Trial counsel testified, "if I call her to the stand for the sole purpose of saying something that Yetta Harris allegedly said, we're going to have an admissibility issue, and I wasn't sure that I could overcome the admissibility of that hearsay statement." Finally, trial counsel believed they had "a very strong identification defense" as well as an alibi witness to testify at trial. Trial counsel "didn't feel [Ms. Davis's] testimony would have added anything."

Trial counsel said Petitioner's alibi witness, Myra Long,[2] testified that she picked up Defendant outside the emergency room at Memorial Hospital and was with him for the remainder of the night. Trial counsel and the private investigator made several attempts to obtain security video from Memorial Hospital, but the hospital had not preserved video from the night of the shooting.

Ms. Davis testified that in 2020, she was incarcerated at Silverdale with Ms. Harris and Petitioner's sister, Lavosia Haggard. Ms. Davis said she saw Ms. Harris and Ms. Haggard engage in an argument, during which Ms. Harris said that she "lied on" Petitioner, that Petitioner did not kill Mr. Williams, and that Petitioner was not even present for the shooting.[3] On cross-examination, Ms. Davis acknowledged her prior criminal record that consisted mainly of "[t]heft and probably drug[]" convictions. She testified, "I made a lot of mistakes."

In a written order denying post-conviction relief, the post-conviction court found that trial counsel "had multiple strategic reasons for not subpoenaing Ms[.] Davis for trial, the most important of which was Ms[.] Davis'[s] lack of credibility." Additionally, the

---

[2] Myra Mayes testified at trial that she also used the name Myra Long. *Hawthorne*, 2016 WL 4708410, at *16.

[3] The post-conviction court allowed Ms. Davis's testimony at the post-conviction hearing, concluding that it was not being admitted for the truth of the matter asserted but rather to show that trial counsel was ineffective for failing to call Ms. Davis as a witness at Petitioner's trial.

court found that calling Ms. Davis as a witness "risked tainting the alibi and police deficiency defenses and, thus, could make the defense look desperate." The court "recognize[d] the strategic value of preserving credibility on relatively strong defenses by declining to introduce less credible evidence." Additionally, the court noted that "significant evidence" established Petitioner's identity as a perpetrator, including Mr. Williams's identification of his shooter as "ReeRee" and "Jerrico" and two trial witnesses who testified that Petitioner's nickname was "ReeRee." The court concluded that trial counsel's performance was not deficient and denied relief.

*Analysis*

Petitioner argues on appeal that trial counsel provided ineffective assistance by failing to call Ms. Davis as a witness at trial. Petitioner abandons all other claims raised in his petition and amended petition for post-conviction relief. The State argues that the post-conviction court properly denied relief.

The right to effective assistance of counsel is protected by both the United States Constitution and the Tennessee Constitution. U.S. Const. amend. VI; Tenn. Const. art. I, § 9; *see also* T.C.A. § 40-30-103 (granting relief when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States). To prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996); *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* at 370 (quoting *Strickland*, 466 U.S. at 694).

A claim for post-conviction relief based on alleged ineffective assistance of counsel presents mixed questions of law and fact. *Mobley v. State*, 397 S.W.3d 70, 80 (Tenn. 2013) (citing *Calvert v. State*, 342 S.W.3d 477, 485 (Tenn. 2011)). A petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f); *Wiley v. State*, 183 S.W.3d 317, 325 (Tenn. 2006). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901

- 5 -

n. 3 (Tenn. 1992)). A post-conviction court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. *Calvert*, 342 S.W.3d at 485 (citing *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999)). "Accordingly, we generally defer to a post-conviction court's findings with respect to witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence." *Mobley*, 397 S.W.3d at 80 (citing *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999)). However, we review a post-conviction court's application of the law to its factual findings de novo without a presumption of correctness. *Id.* (citing *Grindstaff*, 297 S.W.3d at 216; *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007); *Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006)).

Petitioner acknowledges that "Ms. Davis's testimony, as set forth in the record in this case, does present with some admissibility issues," but Petitioner does not advance any argument as to a hearsay exception under which her testimony would have been admitted if offered at trial. Petitioner asserts that "trial counsel was ineffective for not attempting to introduce Ms. Davis' testimony to the jury within a viable hearsay exception[;]" however, "Petitioner is not suggesting to this Court that there is a particular hearsay exception under which this statement could have been introduced, as there was no argument advanced by the petitioner in the court below to support that contention here."

When a petitioner presents at the post-conviction hearing a witness he claims should have been called at trial, the post-conviction court must determine whether the testimony would have been (1) admissible at trial and (2) material to the defense. *Nesbit v. State*, 452 S.W.3d 779, 796-97 (Tenn. 2014) (citing *Plyant v. State*, 263 S.W.3d 854, 869 (Tenn. 2008)). "If the post-conviction court determines that the proffered testimony would not have been admissible at trial *or* that, even if admissible, it would not have materially aided the petitioner's defense at trial, the post-conviction court is justified in finding that trial counsel was not deficient in failing to call that witness at trial." *Plyant*, 263 S.W.3d at 869. (Emphasis in original).

Even if admissible at trial, which Petitioner has not argued or shown, trial counsel's performance was not deficient. Trial counsel made the strategic decision not to call Ms. Davis as a witness at Petitioner's trial after more than adequate investigation and preparation. Trial counsel met with Ms. Davis for an in-person interview. In addition to trial counsel's determination that Ms. Davis's statements presented a hearsay issue, she believed that Ms. Davis lacked credibility and that her testimony would undermine the stronger defenses of a deficient police investigation and flawed lineup identifications. Trial counsel made a reasonable tactical decision not to have Ms. Davis testify after considering the risks against the potential benefits of her testimony.

The record does not preponderate against the post-conviction court's findings that trial counsel's performance was not deficient. Petitioner is not entitled to relief.

## CONCLUSION

Based on the foregoing, the judgment of the post-conviction court is affirmed.

s/Timothy L. Easter
TIMOTHY L. EASTER, JUDGE